**In the Matter of the WELFARE OF A.K.K., Child.**

**No. C8–84–269.**

Court of Appeals of Minnesota.

Oct. 9, 1984.

Melvin J. Peterson, Jr., Minneapolis, for appellant.

Robert M.A. Johnson, Anoka County Atty., Greg L. Gibson, Asst. Anoka County Atty., Anoka, Sharon Hall, Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal from an order terminating the appellant-mother's rights to her child. The trial court found that the child had been adjudicated dependent, and that the mother would not be likely to change her behavior in the foreseeable future. We affirm.

## FACTS

On May 11, 1982, a petition was filed with the Anoka County Court, alleging that the appellant's child was neglected within the meaning of Minn.Stat. § 260.015(10)(a) and (b) (1982). Specifically, the petition alleged that the appellant had left her two-year-old child with the child's maternal grandmother, and that she had provided the grandmother with no information concerning her future plans or when she would return to pick up her child. The petition explained that the appellant had previously been evicted from her apartment and had moved to Texas, from which she had just returned, and that she had established no permanent address. The grandmother was unable to properly care for the child.

Based upon this petition the court signed an order for detention of the child. At a hearing held on June 11, 1982, the parties stipulated to the facts of the petition, agreed to a finding of dependency, rather than neglect, and adopted a placement and rehabilitation plan.

A review hearing was held on September 24, 1982. The appellant's social worker testified that the appellant had not met the conditions of the rehabilitation plan, and the court continued the child's custody with the welfare board and continued the conditions for rehabilitation of the appellant for three more months.

On February 4, 1983, another review hearing was held, and the court continued the matter again to March, 1983. At the March, 1983, hearing the court approved a second rehabilitation plan.

Due to continued non-compliance by the appellant, the County on May 24, 1983, petitioned for termination of her parental rights. A pre-trial motion was heard on July 8, 1983, concerning the constitutionality of the termination statute, and the termination hearing was held on August 9, and September 27, 1983. Evidence submitted at the hearing indicated that the appellant continuously failed to keep appointments with psychologists, parenting classes, and other organizations which she had been required by the rehabilitation plans to attend. She did not return telephone calls, and letters sent to her address were returned as undeliverable. Out of 47 visits scheduled with her child, the appel-

lant had missed 21. Her excuses were feeble, and she testified at the hearing that she had a conflict with authority, difficulty with keeping appointments, didn't feel she should have to prove her love for her child, and didn't think there was anything wrong in the beginning. She stated that she would not participate in another rehabilitation plan and, indeed, her social worker testified that no other plan would work. Psychological testing revealed a "long history of personality problems that are not likely to change significantly" and indicated that the appellant was "at least mildly sociopathic in basic personality disposition." Her MMPI concluded that the treatment prognosis was poor.

After considering the evidence, the Probate-County Court, on January 13, 1984, entered an order terminating the appellant's parental rights.

### ISSUES

1. Whether the evidence and findings of fact support the court's termination of the appellant's parental rights.

2. Whether Minn.Stat. § 260.221 subd. b(5) (1982) is unconstitutional on its face and as applied.

### ANALYSIS

### I.

#### Findings of Fact/Evidence

■ The standard of review for termination proceedings is "whether the court's findings of fact are supported by substantial evidence and are not clearly erroneous." *Matter of the Welfare of Adams*, 352 N.W.2d 105 at 107 (Minn.Ct.App.1984), *citing Matter of the Welfare of Sharp*, 268 N.W.2d 424 (Minn.1978). However, because termination statutes are in derogation of the common law, they must be strictly construed in favor of the parental relationship, *In re Petition of Parks*, 267 Minn. 468, 474, 127 N.W.2d 548, 553 (1964), and trial courts must make clear and specific findings which conform to the statutory requirements. *Matter of the Welfare of*

*Clausen*, 289 N.W.2d 153, 155 (1980). The burden is upon the petitioner to prove that termination is proper, and that burden is "subject to the presumption that a natural parent is a fit and suitable person to be entrusted with the care of a child." *Matter of the Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980).

The appellant claims that the trial court's findings of fact are insufficient and do not meet the requirements of the termination statute—Minn.Stat. § 260.221 (Supp.1983). The court based its order upon subdivision (b)(5) of that statute, which provides:

> The juvenile court may, upon petition, terminate all rights of a parent to a child in the following cases:
>
> * * * * * *
>
> (b) If it finds that one or more of the following conditions exist:
>
> (5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination * * *

#### (a) *Dependency*

■ The appellant first claims that nowhere in the trial court's findings or in any preceding order is there an explanation of the conditions which led to the dependency and how the appellant would have been able to correct those conditions. The court in its findings of fact, however, specifically refers to the petition for neglect which, in turn, specifically indicates the conditions which led to the dependency. The court also noted in its findings that the parties stipulated to the facts in the petition. Further, the court indirectly found that correction of the conditions was to have been accomplished by means of the two rehabilitation plans provided by the County Social Services Department. Several findings refer to the plan and its conditions. In its conclusions of law the court also noted the efforts which would have corrected the dependency.

### (b) *Infrequent visitation*

The appellant also argues that infrequent or sporadic visitation of a child by a parent is an insufficient reason to terminate parental rights. Indeed, in *Matter of the Welfare of Solomon*, 291 N.W.2d 364 (1980) and *In re Linehan*, 280 N.W.2d 29 (Minn.1979) the court held that sporadic visitation by itself would not support termination of a parent's rights; rather, a court must look to whether this inability to care properly for the child will continue indefinitely. The issue must be whether a parent is "presently able and willing to assume his responsibilities and not whether he has from time to time in the past been derelict in his duties." *Linehan*, 280 N.W.2d at 31.

█ In the present situation the trial court not only found that appellant's visitation of her child was infrequent, but also found that her inability to properly care for her child would continue in the future. This finding is supported by the evidence.

### (c) *Projected behavior of appellant*

█ The appellant argues that the court must specifically find that the conditions leading to the present behavior will be "prolonged and indefinite." The court in this instance concluded that the appellant "would not likely change her behavior in the foreseeable future," and outlined that behavior throughout its findings of fact. It appears that the court's conclusion in this case is sufficient, even though it did not use the precise language "prolonged and indefinite." As the court explained in *Matter of the Welfare of Clausen*, 289 N.W.2d 153, 155 (Minn.1980):

> [T]he father argues that these findings are legally insufficient because there is no specific finding that he will be permanently unable to adequately care for his child. Neither the termination statute nor the case law interpreting § 260.-221(b)(5) imposes such a requirement. This court has, however, indicated that *the foreseeable permanency of the inability of the parent is a relevant factor in determining whether reasonable efforts have failed to correct the conditions* leading to the neglect adjudication.

This court in *In re Welfare of Barron*, 268 Minn. 48, 53, 127 N.W.2d 702, 706 (1964), interpreted § 260.221(b)(5) and found:

> [I]t appears that a proceeding to terminate rights is intended for those situations where it reasonably appears that a condition of dependency or neglect will continue for a prolonged, indeterminate period.

(Emphasis supplied.) The *Clausen* court also stated:

> In the case of *Petition of Linehan*, 280 N.W.2d 29, 31 (Minn.1979), this court held that the test for determining whether parental rights should be terminated is whether the parent is "presently able to assume his responsibilities and not whether he has from time to time in the past been derelict in his duties." This test suggests that the relevant time period includes all times up to the time of the termination hearing.

*Id.*, at 156. *Clausen* thus does not appear to require that the court use the exact language used by the *Barron* court, although a court must certainly determine whether the parent would probably be able to change and assume responsibility in the foreseeable future.

█ The trial court's finding in this instance appears to be amply supported by the evidence. The appellant herself testified that she would not attempt any more plans, the social worker indicated that she did not believe that other plans would work, and the psychological evaluations indicated a poor chance of success.

### (d) *Best interests of the child*

The trial court noted in its conclusions of law that termination of the appellant's parental rights "would be in the child's best interests." *Matter of the Welfare of H.G.B.*, 306 N.W.2d 821, 827 (Minn.1981) notes that interests of the child should be a factor to be weighed in termination proceedings. *See also Matter of the Welfare*

*of McDonald,* 316 N.W.2d 19 (Minn.1982), where the court allowed consideration of the best interests of the child in a situation almost identical to the present case.

(e) *Alternative plan for rehabilitation*

■ The appellant suggests that the court, instead of granting the termination petition, should have attempted a different plan for rehabilitation. However, the first two plans were agreed to by the parties and were modified according to the wishes of the appellant. Further, and has been noted above, there is slight chance of any other plan working any better than the first two.

(f) *Adversarial vs. rehabilitative nature of proceedings*

■ The appellant also claims that the termination proceeding below was adversarial, rather than rehabilitative in nature, in violation of the "Intent and Construction" provision of the Juvenile Court Act, which states:

> "[t]he purpose of the laws relating to juvenile courts is to secure for each child alleged or adjudicated dependent * * * care and guidance, preferably in his own home * * * [and] to preserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety cannot be adequately safeguarded without removal * * *"

Minn.Stat. § 260.011 subd. 2 (1982). This last language clearly encompasses the termination provision of the act, for termination necessarily involves removal of a child from a parent's home. Furthermore, the "adversarial" nature of the actual termination proceeding (i.e. allowing testimony adverse to the natural parent) is recognized in the statutes which require a hearing and a court order based upon "clear and convincing evidence." *See* Minn.Stat. § 260.231; 260.241 (1982). Without adverse testimony the burden of proof could never be met, and the presumption in favor of a natural parent's rights would never be overcome. That a welfare department may present

unfavorable testimony is supported by cases such as *Matter of the Welfare of McDonald,* 316 N.W.2d 19 (Minn.1982) and *Matter of the Welfare of Chosa,* 290 N.W.2d 766 (Minn.1980), which also involved petitions for termination brought by the county.

Finally, it should be noted that in the review proceeding prior to termination of the appellant's rights, the trial court stressed that the child should remain with the mother, if possible, and scheduled several hearings and tried two plans to rehabilitate the appellant. For approximately fifteen months the procedures remained non-adversarial. Only when these efforts failed did the County resort to termination proceedings.

## II.

### Constitutional issues

The appellant argues that the termination statute is unconstitutionally vague on its face and as applied. Several issues, both procedural and substantive, are raised by this claim.

(a) *Notification of attorney general*

The appellant did not notify the Minnesota Attorney General of this appeal and her constitutional challenge of the termination statute, in contravention of Rule 144, Minn. R.Civ.App.P., which states:

> When the constitutionality of an act of the legislature is questioned in any appellate proceeding to which the state or an officer, agency or employee of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general within time to afford him an opportunity to intervene.

Official advisory comment to an earlier and almost identical version of this rule explains:

> The notice required by this rule must be given upon appeal even though the party has previously notified the attorney general pursuant to Minn.R.Civ.P. 24.04 while the matter was in the trial court.

See also *Automotive Merchandise, Inc. v. Smith,* 297 Minn. 475, 476–477, 212 N.W.2d 678, 679 (1973); *Village of Farmington v. Minnesota Municipal Comm'n,* 284 Minn. 125, 138, 170 N.W.2d 197, 205 (1969). The purpose of the rule is "to insure the fullest possible presentation of the matter before [the] court," *Hughes v. Patrick and Assoc.,* 300 Minn. 387, 391, 220 N.W.2d 347, 350 (1974). Nonetheless, because we do not adopt appellant's arguments, we will briefly address the issues which he has raised.

#### (b) *Sections of statute at issue*

 Although the trial court terminated the appellant's rights on the basis of only one section of the statute (§ 260.221 subd. (b)(5)), the appellant continues to argue that other sections are also unconstitutional. These sections may not be considered upon appeal, since the constitutionality of a statutory provision should not be determined by a court unless necessary to dispose of the particular facts of the case. *Striebel v. Minnesota State High School League,* 321 N.W.2d 400 (Minn.1982); *State v. Hoyt,* 304 N.W.2d 884 (Minn.1981). In concert with this rule is the principle that a person may not question the constitutionality of a law which does not affect him personally, *Lott v. Davidson,* 261 Minn. 130, 109 N.W.2d 336 (1961), but may only raise the issue if the statutory provision has been applied to his disadvantage. *State v. Meyer,* 228 Minn. 286, 299, 37 N.W.2d 3, 12 (1949).

The appellant also challenges the termination statute because it lists several grounds for termination of parental rights. Appellant claims that the statute is vague because several grounds are listed.

 Statutory language is impermissibly vague where "men of common intelligence must necessarily guess at its meaning." *St. Cloud Newspapers, Inc. v. District 742 Community Schools,* 332 N.W.2d 1, 7 (Minn.1983), *quoting Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). There is a presumption in favor of the constitutionality of a statute, and the burden is upon a challenging party to prove its invalidity. *Essling v. Markman,* 335 N.W.2d 237 (Minn.1983).

 Minn.Stat. § 260.221 cannot be characterized as vague simply because it lists several means by which a parent may violate her duty to a child and thereby lose her parental rights. In the present instance the petition for termination clearly placed the appellant on notice of which provisions of the statute she had allegedly violated. The statute is not unconstitutional either as applied or on its face.

#### (c) *"Reasonable efforts" requirement*

 The provision upon which the trial court relied when terminating the appellant's rights requires a finding "[t]hat following upon a determination of neglect or dependency, *reasonable efforts,* under the direction of the court, have failed to correct the conditions leading to the determination * * *" (emphasis supplied). The appellant claims that the language "reasonable efforts" is unconstitutionally vague.

The rationale behind the due process clause is that rules which intrude upon a person's rights and freedom as a citizen should be cast in language which is clear and unambiguous, and which gives notice of what conduct is prohibited. *See, e.g., State v. Lanesboro Produce & Hatchery Co.,* 221 Minn. 246, 21 N.W.2d 792 (1946). In this instance, however, what is prohibited is already known. The provision at issue is directed against neglect of a child or conduct which results in a child's dependency. These terms are defined in Minn.Stat. § 260.015 subd. 6 and subd. 10 (1982), and have not been challenged here. The appellant has from the beginning of these proceedings been on notice of what conduct led to the initial finding of dependency and what she was required to do to correct that condition. The term "reasonable efforts" relates not to the conduct which is prohibited, but to the means of correcting that conduct.

There are at least four reasons why the statutory language must be upheld. First of all, the language "reasonable efforts"

favors the appellant, rather than working against her interests, since the statute does not require superhuman or "unreasonable" efforts.

Secondly, the language "reasonable efforts" is immediately followed by a provision which limits the type of efforts which will be considered "reasonable." Those efforts must be exerted "under the direction of the court"; thus, the court in each case should have already provided guidance concerning the type of behavior which would have corrected the conditions leading to the dependency. Indeed, in this instance two plans were prepared for and agreed to by the appellant.

The legislature cannot be expected to provide specific plans for rehabilitation of a parent, or to explain within the confines of a general statute the exact efforts which must be made by a parent to correct conditions leading to a determination of dependency. Each case is unique, and the courts and social service agencies must have a certain amount of freedom to determine what is necessary in a particular fact situation. In exercising its function in applying the termination statute the court did not make, amend or change the statutory law (*see Johnson v. Johnson*, 277 N.W.2d 208 (Minn.1979)), but merely determined that the appellant had not made reasonable efforts to comply with duties imposed by common and statutory laws, and that therefore the statutorily defined remedial measures should be applied.

Finally, even if the term "reasonable efforts" may seem vague on its face, the courts have corrected any defect in the language by severely restricting its construction and application. (*See Grayned v. City of Rockford*, 408 U.S. 104, 111–112, 92 S.Ct. 2294, 2300–2301, 33 L.Ed.2d 222 (1972)). This has been accomplished by placing the burden on the party requesting termination to prove by clear and convincing evidence that reasonable efforts have failed to correct the neglect or dependency. *Matter of the Welfare of Solomon*, 291 N.W.2d 364, 367–368 (Minn.1980). A further restriction upon this language is the presumption established by Minn.Stat. § 260.011 (1982) and our supreme court that the natural parent is entitled to the care and custody of the child.

## DECISION

The court's order terminating the appellant's parental rights is affirmed.