**NORTHERN MESSENGER, INC.,**
**Relator,**

**v.**

**AIRPORT COURIERS, INC., Minnesota Transportation Regulation Board, Respondents.**

**No. C2–85–1296.**

Court of Appeals of Minnesota.

Nov. 5, 1985.

Review Denied Jan. 17, 1986.

Byron E. Starns, James G. Bullard, Minneapolis, for relator.

Nicholas Sherwood, Bloomington, Conrad J. Carr, Minneapolis, for Airport Couriers, Inc.

Hubert H. Humphrey, III, Atty. Gen., Craig R. Anderson, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Transp. Regulation Bd.

Heard, considered and decided by POPO-VICH, C.J., and LESLIE and NIEREN-GARTEN, JJ.

## OPINION

LESLIE, Judge.

Northern Messenger, Inc. appeals from an order of the Minnesota Transportation Regulation Board granting local cartage carrier authority to Airport Couriers, Inc. Northern Messenger contends the board's findings are not supported by substantial evidence and its decision is arbitrary and capricious. We reverse.

## FACTS

Airport Couriers, Inc., a Minnesota corporation, was formed in June, 1983 by three former drivers for an air freight carrier. All three have had at least fifteen years of driving experience and were laid off when the carrier lost its contract with Emery Air Freight.

Airport Couriers primarily hauls air freight which is exempt from intrastate regulation. It petitioned for local cartage carrier authority on June 29, 1983 and commenced hauling local cartage after October 14 when it entered into a lease with another carrier, American Transfer Co.

On November 14 a contested case hearing was held regarding Airport Couriers' petition for local cartage carrier authority. The three principals testified. The business operates out of the home of one of the principals. They have three vehicles, all of which are in good operating condition. Airport Couriers also contracts with two owner-operators. Each principal emphasized his experience in the business and the desire of shippers to be able to ship local cartage with the same carrier which hauls its air freight. There were indications at the hearing that the lease with American Transfer did not comply with Minn.R. 7800.2600–.2700 (1983).

A representative of Aeroquip Company testified in support of the petition. Aeroquip ships parts and equipment from its Bloomington warehouse. Most of these shipments are interstate air freight shipments. It uses Airport Couriers for these shipments and finds its services to be superior to most other carrier services. It has used Airport Couriers only once for local cartage carrier service.

A representative from Patricia Kladis Advertising also testified in support of Airport Couriers. It has used Airport Couriers local cartage services approximately twelve times and finds its services to be more prompt than others.

Air Freight Express, an interstate carrier of freight has used Airport Couriers for approximately four local cartage carrier shipments per day and finds its services to be superior.

A representative of intervenor Northern Messenger also testified. The administrative law judge refused to allow testimony from three of Northern Messenger's witnesses on the grounds that they had waived their right to testify because they had standing to intervene as parties but had failed to do so and that they had not been disclosed to Airport Couriers. *Northern Messenger, Inc. v. Airport Couriers, Inc.*, 359 N.W.2d 302, 304 (Minn.Ct.App. 1984).

The administrative law judge concluded that the petitioners were fit and able to conduct the proposed local cartage carrier operations and its vehicles were within the prescribed safety requirements but that it failed to establish a need for the proposed local cartage carrier operation because the three supporting witnesses "have rather minimal needs for local cartage services." He recommended that the petition be denied.

The Board adopted the findings of the administrative law judge without any material change but concluded that there is a need for the proposed local cartage carrier service which is not being adequately met by other carriers. The Board upheld the administrative law judge's refusal to allow the testimony of Northern Messenger's three witnesses. It granted Airport Couriers' petition for local cartage carrier au-

thority in March, 1984 and Airport Courier began operations as an authorized carrier.

Northern Messenger filed a petition for certiorari in this court and then discovered that the tape containing the testimony of its representative had been lost. This court remanded for a supplemental hearing for the purpose of retaking the Northern Messenger representative's testimony and for taking the testimony of the three excluded witnesses. The representative, Douglas Philstrom, and Juel Casperson testified at the reconvened hearing; the third witness was unable to appear. Because this court had retained appellate jurisdiction the Board did not reconsider its decision. *Id.*

In *Northern Messenger* this court held that the exclusion of the witnesses on the essential issue of whether there were adequate existing services prejudiced Northern Messenger's substantial rights. *Id.* at 305. We reversed the Board's decision and remanded it for reconsideration in light of the new testimony.

After supplemental briefs and oral arguments the Board made new findings and again concluded that the petitioners are fit and able to conduct the proposed local cartage carrier operations and that it demonstrated the need for the proposed operations.

### ISSUE

Is the Board's conclusion that there is a need for Airport Couriers' local cartage carrier service supported by substantial evidence?

### ANALYSIS

Minn.Stat. § 221.296, subd. 4 (1984) governs the issuance of local cartage carrier permits. It provides in part:

The board, after notice to interested parties and a hearing, shall issue the permit upon compliance with laws and regulations relating to it unless it finds that the area to be served has a sufficient number of local cartage carriers to fully and adequately meet the needs of the area,

that the petitioners' vehicles do not meet the safety standards adopted by rule by the commissioner, or that petitioner is not fit and able to conduct the proposed operations.

*Id.* Under this statute, the Board must issue a permit if, after proper notice and a hearing, it finds three requirements have been met. With regard to the first requirement, need, the Board found that based on the testimony of representatives of Patricia Kladis Advertising and Air Freight Express, the area to be served does not have a sufficient number of local cartage carriers to fully and adequately meet the needs of the area.

■ The area which is to be served by Airport Couriers is the "two contiguous cities of the first class and municipalities contiguous thereto * * *." *See* Minn.Stat. 221.011, subd. 28 (1984). "Contiguous" means "having any portion of a common boundary with another municipality or with one of a group of contiguous municipalities." Minn.Stat. 221.011, subd. 17 (1984). Roughly speaking then, the area in question is the Twin Cities metropolitan area. The burden is upon Airport Couriers "of going forward with the evidence and establishing affirmatively the statutory conditions precedent to the granting of the permit." *Signal Delivery Service, Inc. v. Brynwood Transfer Co.*, 288 N.W.2d 707, 712 (Minn.1980); Minn.R. § 1400.7300, subp. 5 (1983). In this case, Airport Couriers has the burden of showing that there is an insufficient number of local cartage carriers to fully and adequately serve the metropolitan area.

In its order issued on June 14, 1985 the board found that at the time of the hearing Aeroquip had used Airport Couriers only once for local cartage service, Patricia Kaldis Advertising had used Airport Couriers twelve times, and Air Freight Express had used Airport Couriers approximately four times a day. The board also found that there were 247 authorized cartage carriers in the seven county metropolitan area and 30 of these had become inactive in the preceding year. The board further found

that Northern Messenger offered local cartage services 24 hours a day, seven days a week, averaged 800 to 1,000 deliveries a day, and it had the ability to increase its capacity on short notice. It finally found that three other carriers offer similar services to those of Northern Messenger.

While recognizing that Aeroquip only had a "minimal need" for Air Couriers' services, the Board determined that the testimony from Kladis Advertising and Air Freight Express supports the conclusion "that petitioner has here demonstrated sufficient need for the proposed service to carry its burden of proof on this issue." The board noted that need was shown "especially in the southern part of the local cartage zone" but that Airport Courier had shown an area-wide need for its proposed services.

Northern Messenger contends that there is not substantial evidence to support a conclusion of need. We agree.

■ This court may reverse an agency decision "if the substantial rights of the petitioners may have been prejudiced because the administrative * * * conclusion * * * [is] [u]nsupported by substantial evidence in view of the entire record as submitted * * *." Minn.Stat. § 14.69 (1984). Substantial evidence is:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;
2. More than a scintilla of evidence;
3. More than some evidence;
4. More than any evidence; and
5. Evidence considered in its entirety.

*Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984).

■ The testimony of representatives from Patricia Kladis Advertising and Air Freight Express constitutes no more than some evidence. It is inadequate to support a conclusion that there are insufficient numbers of local cartage carriers to serve the metropolitan area. By accepting such a meager showing of need for the whole metropolitan area, the board has in effect

rendered the statutory requirement of need a nullity.

■ In addition the evidence must be considered in its entirety and in this case that includes the testimony of a representative of Northern Messenger and the testimony of Casperson and Philstrom. Unlike Minn.Stat. § 221.121 (1984) which sets forth the requirements for permits such as an irregular route common carrier permit, Minn.Stat. § 221.296 does not require a protestant to demonstrate that the area is fully and adequately serviced by existing carriers. However, protestants must have the opportunity to address the issue of whether an area is fully and adequately serviced. *Northern Messenger*, 359 N.W.2d at 305.

Northern Messenger operates 24 hours a day, seven days a week and has the capacity to handle 20 to 30 additional deliveries a day without having to add new drivers.

Philstrom testified that his two companies which offer local cartage carrier services have operators on duty 24 hours a day, seven days a week. His vehicles range from station wagons to 22 foot trucks, and he has a variety of specialized services such as forklifts and warehousing. He currently has sufficient capacity to handle an additional 20 to 30 deliveries a day.

Casperson testified that his company provides local cartage service throughout the metropolitan area on a 24 hour a day, seven day a week basis. His fleet ranges from compact cars to large tractor trailer units and he provides a variety of specialized equipment. Further he has the capacity to handle 20 to 30 additional deliveries a day without increasing his staff.

There was further testimony that there are 247 active local cartage carrier permits outstanding representing 2,452 vehicles. Thirty permits representing 297 vehicles became inactive or were suspended in the two-year-period preceding the initial hearing.

■ We conclude that based both upon the evidence submitted on behalf of Airport Couriers and Northern Messenger, there is

not substantial evidence to support a conclusion that there is a need for Airport Couriers' local cartage carrier service. We also note that the Board failed to explain exactly why it rejected the administrative law judge's finding on the question of need. In the absence of an explanation the Board's determination evidences the agency's desire to exercise its will and not its judgment. *Beaty v. Minnesota Board of Teaching,* 354 N.W.2d 466, 472 (Minn.Ct. App.1984). The board should have explained why a level of activity which the administrative law judge found to be "minimal" was sufficient to support the granting of a local cartage carrier permit.

### DECISION

The Board's finding of need for the proposed service is not supported by substantial evidence. Because it is clear that there is not substantial evidence to support the need for an additional carrier, we need not determine if substantial evidence supports the Board's conclusion that Airport Couriers is fit and able to conduct the proposed operation.

Reversed.