**YELLOWBIRD, INC., Relator,**

v.

**MSP EXPRESS, INC., Minnesota Transportation Regulation Board, Respondents.**

**No. C3–85–1243.**

Court of Appeals of Minnesota.

Nov. 26, 1985.

Michael J. Pitton, St. Paul, for relator.

Stanley C. Olsen, Jr., Minneapolis, Hubert H. Humphrey, III, Atty. Gen., Craig R. Anderson, Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered, and decided by CRIPPEN, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

Yellowbird, Inc. appeals from an order of the Minnesota Transportation Regulation Board granting MSP Express, Inc.'s petition for a certificate of public convenience and necessity as a regular route common carrier of passengers and their baggage between the Minneapolis-St. Paul International Airport and Burnsville, Savage, Shakopee, Faribault and Owatonna. Yellowbird contends that the Board's decision is arbitrary and capricious, is not supported by substantial evidence, and is based upon unlawful procedure. We reverse and remand.

## FACTS

In May 1984 James and Nancy Gardner, doing business as MSP Express, filed a petition for regular route common carrier permit authority to transport passengers between the Minneapolis-St. Paul International Airport and Burnsville, Savage, Shakopee, Hastings, Red Wing, Faribault and Owatonna. The Gardners then asked that the petition be amended to reflect their plans to operate as a corporation.

The Gardners proposed to operate regularly scheduled routes between the airport and three sets of southern Minnesota communities. The first route begins at Shakopee and stops at Savage and Burnsville before reaching the airport. Shakopee is 22 miles from the airport. The second route begins at Red Wing and stops at Hastings. Red Wing is 47 miles from the airport. The third route begins at Owatonna and stops at Faribault. Owatonna is 60 miles from the airport. Each route has a return schedule. Three round trips are scheduled for each week day. The proposed weekend service was more limited.

Yellowbird filed a protest. A hearing was held in October 1984.

James Gardner testified that after the petition was filed MSP began carrying interstate passengers anywhere within 25 miles of the airport because Gardner believed the service fell within an interstate exception to current regulations. Between July 15 and July 31, 1984, MSP operated on the scheduled routes between the airport and Shakopee. After July 31, MSP abandoned its regularly scheduled Shakopee airport route and began taking passengers back and forth anywhere south and west of the airport as long as either the destination or pickup point was within a 25–mile radius of the airport. During August MSP transported 73 passengers and in September it transported 167 passengers. In the first 10 days of October, it transported 101 passengers and by the end of the month had transported 269 "fares."

MSP Express has been losing money since it began operations. After the company acquires a third van, which Gardner believes is the minimum number for the service proposed, Gardner estimates that between 700 and 800 passengers per month will be needed in order for the enterprise to break even.

At the time of the hearing, Gardner had one van which had met safety standards. A second van was scheduled for delivery and had not been inspected. The Gardners filed a financial statement as equal partners doing business as MSP Express, but never prepared a financial statement for the corporate entity even though the administrative law judge requested one.

The president of Northstar Travel Service, which has offices in Owatonna, testified that Jefferson Bus Lines is the only regular route common carrier which serves passengers traveling from Owatonna to the airport and, in his opinion, a regularly scheduled van or limousine service is needed for travelers for that route.

An owner of First World Travel in Burnsville testified that his office arranges travel for several hundred people per month and a significant number require transportation between Burnsville and the airport. In his opinion, there is a need for moving small charter groups from Burnsville to the airport in vans or limousines because these groups now travel in charter buses which are often half empty.

The manager of Howard Johnson's Motor Lodge in Burnsville testified than many of the lodge's guests use MSP because it is more convenient than the lodge's complimentary service. Minneapolis and Suburban Airport Limousine Service has the authority to transport passengers between the lodge and the airport on a regularly scheduled basis but does so on a "reservation only" basis.

A Savage resident who makes up to three trips a year from the airport testified that there is no regular route passenger service between Savage and the airport and she intends to use MSP's services. A Shakopee resident who makes 20–24 trips a year from the airport testified that MSP is the only regularly scheduled service between Shakopee and the airport. A Faribault resident who makes at least two trips to the airport each year testified that the Jefferson Bus Lines service is very inconvenient.

A co-owner of Suburban Taxi, which operates in the suburbs south and west of the airport, is also a consultant to transportation services. He testified that MSP does not have enough vehicles to operate its proposed schedule and that the Gardners' projected operating costs are grossly underestimated. Suburban Taxi serves the area proposed for service by MSP with 36 taxis. Some carry as many as nine passengers. The co-owner also testified that (1) there are also two limousine services offering charter service for Savage and Burnsville; (2) at least six other taxi companies have unexercised authority to serve those areas; (3) Shakopee and Hastings are served by two bus lines, two taxi companies and MTL's Dial-A-Ride service; and (4) Faribault and Owatonna are served by two limousines, a local taxi company and Jefferson Bus Lines.

The general manager of Minneapolis and Suburban Airport Limousine Service testified that his company operates 29 large vans. It has authority to serve the Howard Johnson's Lodge in Burnsville on a regular route basis. It also has charter authority to operate from the airport to all points in Minnesota. The manager believes that MSP badly underestimated costs and it will need seven vans to operate its proposed schedules.

Yellowbird has statewide charter authority and frequently runs charters to areas sought to be served by MSP. The president of Yellowbird agrees that, for the reasons given by other owners and managers, MSP's cost estimates are far too low and that it will need seven vans to operate its proposed schedules.

The administrative law judge concluded that (1) all of the regular route passenger transportation services applied for are within the jurisdiction of the Transportation Regulation Board; (2) MSP is not fit and able to provide all the proposed services; (3) it is fit and able to perform regular route common carrier passenger service between Burnsville and Savage and the airport; (4) its vehicle which began operation on July 15, 1984 meets the prescribed safe-

ty standards, but the record offers no basis for making any conclusions with regard to any other vehicle; (5) petitioner proved a need for the service to Burnsville and Savage, but failed to establish a need for service for any other communities which it proposed to serve; and (6) Yellowbird failed to prove that existing permit and certified carriers offer sufficient transportation services to meet the needs of Burnsville and Savage for regular route passenger service to and from the airport.

The administrative law judge recommended that the petition for a certificate of public convenience and necessity as a regular route common carrier of passengers between Burnsville, Savage and the airport be granted to James Gardner and Nancy Gardner, doing business as MSP, but that the remainder of the petition be denied.

On June 5 the Board issued an order granting MSP, Incorporated a certificate of public convenience and necessity as a regular route common carrier of passengers between the airport and Burnsville, Savage, Shakopee, Faribault and Owatonna. The Board made no findings of fact and rejected the administrative law judge's findings.

Yellowbird appeals. MSP neither filed a brief nor appeared at oral argument.

## ISSUE

Was the Board's decision arbitrary or made upon unlawful procedure?

## ANALYSIS

After petitioning for a regular route common carrier permit, MSP began operating within a 25–mile radius of the airport. In doing so, the Gardners relied upon 49 U.S.C. § 10526(a)(8) (1984) which provides that the Interstate Commerce Commission does *not* have jurisdiction over "transportation of passengers by motor vehicle incidental to transportation by aircraft." Thus, while it was operating without a permit, MSP was essentially assuming that neither the Interstate Commerce Commission nor the Minnesota Transportation

Board had jurisdiction to regulate its transportation service. The administrative law judge found that all of the regular route transportation services applied for by MSP are within the Board's jurisdiction. The Board assumed jurisdiction. Yellowbird initially rebuts possible arguments that MSP might make with regard to the Board assuming jurisdiction over its petition. Since MSP does not now challenge the Board's jurisdiction, we need not consider the issue.

Judicial review of an administrative agency decision in a contested case is governed by the Administrative Procedures Act, Minn.Stat. §§ 14.63–.69 (1984). This court may reverse an agency's decision if we find it is arbitrary and capricious, made upon unlawful procedure, or affected by other errors of law. Minn.Stat. § 14.69 (1984). We adhere to the "fundamental concept that decisions of administrative agencies enjoy a presumption of correctness * * *" but:

> [W]here there is a combination of danger signals which suggest the agency has not taken a "hard look" at the salient problems and "has not genuinely engaged in reasoned decisionmaking" it is the duty of the court to intervene.

*Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824–25 (Minn.1977) (citing *Greater Boston Television Corp. v. Federal Communications Commission*, 444 F.2d 841, 851 (D.C.Cir.1971)). A combination of dangerous signals exists in this case.

Every decision and order made by an agency must "include the agency's findings of fact and conclusions on all material issues." Minn.Stat. § 14.62, subd. 1 (1984). Contrary to the procedural requirements of the statute, the Board neither made findings of fact nor adopted those made by the administrative law judge. In the absence of findings, we are unable to determine whether substantial evidence supports the Board's findings, conclusions or decision.

■ Without findings, the Board concluded that the administrative law judge erred by recommending denial of authority to serve Shakopee, Faribault and Owaton-

na. The Board offered no reasonable explanation of why it rejected the administrative law judge's conclusion that petitioners had failed to establish a need for its service in Faribault, Owatonna and Shakopee. The Board merely cited part of a statutory section and summarily concluded that testimony supported the need for service. The Board ignored the administrative law judge's conclusion that petitioners were not fit and able to provide all of the proposed services, but were only fit and able to provide regular route common carrier passenger service between Burnsville and Savage and the airport. The Board also ignored the administrative law judge's finding that his findings, conclusions, and recommendations related only to the application made by the Gardners as equal partners doing business as MSP Express. The Board ordered that a certificate be granted to the corporation, not to the Gardners. The absence of a reasoned explanation, the lack of consideration of the statutory requirement that a provider be fit and able, and the decision to issue a certificate to the corporation are evidence of the Board's desire to exercise its will and not its judgment. *See Beaty v. Minnesota Board of Teaching,* 354 N.W.2d 466, 472 (Minn.Ct. App.1984).

■ The Board acknowledges that Yellowbird requested oral argument before the Board after exceptions had been filed and states that it failed to notice the request. A decision in contested cases is not to be made until each party who is adversely affected has been given an opportunity to "present argument to a majority of the officials who are to render the decision." Minn.Stat. § 14.61 (1984). Again, the Board failed to follow statutory procedure, resulting in a "lack of basic fairness" in its decisionmaking process. *See In re Haugen,* 278 N.W.2d 75 (Minn.1979).

## DECISION

The Board's decision was both arbitrary and capricious and based upon unlawful procedure. We reverse and remand to give the Board an opportunity to follow proper procedure and to make a reasoned decision.

Reversed and remanded.