William J. PROETZ, D.C., Relator,

v.

MINNESOTA BOARD OF CHIROPRACTIC EXAMINERS,
Respondent.

No. C8–85–1741.

Court of Appeals of Minnesota.

Feb. 25, 1986.

Jack S. Nordby, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert T. Holley, Sp. Asst. Atty. Gen., Minneapolis, for respondent.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

William J. Proetz appeals from an order of the Minnesota Board of Chiropractic Examiners revoking his license and imposing all costs incurred by the Board in the disciplinary proceeding. Proetz contends the Board's order was defective and improperly served; the sanctions were excessive; the costs were improperly imposed; Minn.Stat. § 148.10, subd. 1, is unconstitutionally vague and overbroad; the prior restrictions on Proetz' practice were contrary to the interests of his patients and the public; and the Board's findings are not supported by the evidence. We affirm.

## FACTS

Proetz was licensed by the Board in March 1973. In 1979 the Board suspended him for nine months and then placed him on probation for three years. The conditions of his probation were set forth in a June 29, 1979, order. By order dated April 30, 1981, the Board indefinitely suspended him for probation violations. He petitioned for reinstatement on a conditional basis, and a settlement agreement was reached. By order dated January 18, 1982, the Board reinstated Proetz's license on certain conditions. Paragraphs two and three of the 1982 order provide:

2. Any violation of this Order by Licensee shall constitute the violation of a lawful order of the Board within the meaning of Minn.Stat. § 148.10, subd. 1(9) (1980).

3. Unless determined in accordance with paragraph 5 below, the existence or nonexistence of any such violation shall be determined after a contested case hearing conducted pursuant to the Minnesota Administrative Procedure Act and applicable rules of the Office of Administrative Hearings, except that the licensee shall bear the burden of persuasion at any such hearing. This Order and Settlement Agreement upon which it is based including all parts and attachments of each, shall be admissible into evidence without objection at any such hearing and shall be accorded conclusive weight regarding the standards by which the Licensee is required to practice. The sole issue to be determined at any such hearing shall be whether Licensee has violated any part of this Order; and Licensee shall assert no claim at any such hearing that this Order or any of its parts violates constitutional provisions, exceeds the Board's authority, was made by unlawful procedure, is affected by other error of law, is unsupported by substantial evidence, is arbitrary or capricious, is vague or unclear, or is or has become in any other way or for any other reason unenforceable and defective.

Under the order Proetz is (1) precluded from providing chiropractic service to any patient on more than 30 occasions in a calendar year, on more than ten occasions in a calendar month, or on more than one occasion in a day; (2) required to submit a written report every two months identifying his patients, their ages, and the service rendered; (3) required to refer patients to a chiropractic referral service if he believes a patient requires more care than he can provide because of the order; (4) precluded from providing unnecessary chiropractic services; (5) precluded from x-raying patients above the neck or below the pelvis without written permission; (6) precluded from taking x-rays where x-rays less than a year old are available; (7) precluded from providing or offering to provide free initial examinations or discounts which might be viewed as an inducement to receive additional services, except to persons who cannot otherwise pay; (8) precluded from claiming, representing, or intimating that a predetermined schedule of treatment is required to care for the patient or that failure to receive treatments will likely exacerbate a condition; and (9) precluded from representing or advertising that he "possesses a special, unique or superior qualification, training or expertise in the practice or in any area of the practice of chiropractic."

In 1983 Proetz provided chiropractic services to Raymond Jackson 59 times, to Carol Borvan 67 times, and to Jocallyn Jackson 61 times. He provided services to seven other patients on more than 30 occasions in 1983. In 1984 Proetz provided services to 19 patients on more than 30 occasions within the year. He provided service twice to three patients in the same day. He did not refer any patients to a referral service. From January 1983 through October 1984 he failed to provide the Board with any of the required information.

Proetz provided cards to Marjorie Collins entitling the bearer to free chiropractic services. He offered no evidence that she could not pay for the services. He sent a letter to Daniel Hom to return for periodic checkups, indicating he would also like to check his heart, lungs, blood pressure and kidneys at no additional charge. He provided no evidence that Hom was unable to pay for the services. Proetz encouraged Alice West to bring in members of her family for free chiropractic examinations and gave her three cards entitling the bearer to free chiropractic services. He provided no evidence that any of these people were unable to pay. Proetz offered to provide free initial chiropractic examinations to Douglas Nelson's relatives. He provided no evidence of inability to pay.

Proetz x-rayed Marjorie Collins, Daniel Hom, Debra Hom, and Alice West above the neck. He had x-rays taken of Linda Kirsch, even though she brought in x-rays which had been taken less than a month earlier. Proetz told Marjorie Collins that if she discontinued treatment with him, all he had done would be reversed.

Proetz set up a predetermined schedule of treatments for ten patients. He wrote and phoned one to encourage her to continue badly needed treatments. He advised another that her condition would become more serious if untreated. He told Nancy Sweningson that if she did not come in for treatment, she would become crippled or handicapped. He told another that if she left untreated, an early and untimely death would occur.

He gave two patients a "Patient-Doctor Agreement" providing that "certain amount of treatments are required in a set amount of time to get results we both desire." He showed one of these patients examples of untreated people who died at an early age and advised another that failure to follow the established schedule would adversely affect the healing process.

Proetz regularly uses calendars for predetermined appointments for predetermined periods. He routinely prescribes a series of treatments for every patient in which vertebral subluxation is found regardless of patient symptoms, history, or test results. The causes of vertebral subluxation are varied, and Proetz's practice follows the belief that by age two every

person has vertebral subluxation requiring chiropractic care.

Proetz advised Debra Hom that multiple sclerosis is not a disease but a series of symptoms which he could treat and which would disappear with treatment.

Even though Patricia Welliver did not tell Proetz who her insurance carrier was, Proetz advised her that the carrier would pay 100 percent of her chiropractic care expenses.

Proetz practices alone at the Woodbury Center. He placed an ad in the Union Advocate stating, "The Woodbury Center combines the most modern equipment and techniques with highly trained professionals specializing in nerve and spine rehabilitation." He placed another ad in a newsletter which stated in part, "We can treat it better than anyone else!"

In June 1983 Proetz took Daniel Hom's blood pressure by loosely wrapping a blood pressure cuff around Hom's arm and placing a stethoscope on Hom's ulner artery midway between the elbow and wrist. The procedure established by the American Red Cross, the American Heart Association, the Minnesota Department of Health, and the University of Minnesota requires that the cuff be firmly wrapped around the patient's arm and that the stethoscope be placed on the brachial artery at the anecubital fossa or the inside of the elbow.

Proetz advised Debra Hom that her ten-year-old daughter would not lose weight eating "barely nothing" unless she received chiropractic treatment for her subluxations.

In June 1983 Proetz told Cheryl Fearing that she had two fused vertebrae and that one was close to fusing. Subsequent x-rays revealed no fused vertebrae. In October 1983 Proetz told Carole Wald that she had three fused vertebrae. Proetz's October 1983 x-ray revealed no fused vertebrae. Subsequent x-rays revealed no fused vertebrae.

In June 1983 Proetz told Cheryl Fearing that he could cure the side effects of the polio that her husband had had as a child.

Ronda Wittenkeller was told by Proetz's office assistant that each visit would be $23. She was charged $40 for each visit. After receiving the "standard fee schedule," Linda Kirsch expected to be charged $22 per visit, rather than the $40 per visit she was charged.

Proetz called Marjorie Collins in October 1983 to tell her that her pending worker's compensation claim would be impaired if she pursued her complaint against him.

Proetz encouraged Patricia Welliver to make a claim against her auto insurance carrier and to contact an attorney because of a minor accident in which she was not injured. She asked her insurance company to discontinue paying claims which she believed were false.

Proetz distributed an advertisement picturing a California chiropractor and identifying the chiropractor as Proetz.

Proetz wrote to Sandra Phernetton, advising her that if she did not return to his office for scheduled treatments, he would advise her insurance carrier that "no further treatment is necessary."

Douglas Nelson is totally disabled as a result of an automobile accident. After Nelson told Proetz that he would not keep the appointments that Proetz had scheduled, Proetz advised American Family Insurance Co. that Nelson was discharged and "no further care was presently needed." Nelson's wage loss benefits were terminated.

On October 30, 1984, the Board issued a notice and order for hearing setting out 40 allegations and stating that allegations 1 through 29 constitute violations of a lawful order of the Board within the meaning of Minn.Stat. § 148.10, subd. 1(9), and that allegations 30 through 40 constitute unprofessional conduct under Minn.Stat. § 148.-10, subd. 1, or prohibited advertising within the meaning of Minn.Stat. § 148.10, subd. 1, and Minn. R. 2500.0400.

The administrative law judge made 75 findings of fact and concluded that Proetz had violated both the Board's orders and applicable statutes. She recommended

that the Board take action against his license.

The Board adopted the findings of the administrative law judge and concluded that 43 of the 49 allegations (including subparts) had been proved and that Proetz "conducted himself in an unprofessional manner under the law applicable to the practice of chiropractic." It ordered that his license be revoked, that costs be assessed, and that he could not apply for a license before August 13, 1991.

## ISSUES

1. Did the Board commit reversible error when it issued and served its order?

2. Did the Board abuse its discretion when it revoked Proetz's license, imposed costs, and ordered that he could not reapply for a license before August 13, 1991?

3. Did the Board err in imposing costs?

4. Is Minn.Stat. § 148.10 unconstitutionally vague or overbroad?

5. Can Proetz challenge the terms of the 1982 order?

6. Are the Board's findings supported by substantial evidence?

## ANALYSIS

### I

In its findings of fact, conclusions and order the Board "adopt[ed] as its own and incorporat[ed] herein by reference all findings, 1–75 of the Administrative Law Judge * * *." The Board also adopted the administrative law judge's conclusions and incorporated them by reference. It supplemented the conclusions with two of its own and rephrased one. The Board's decision was delivered to Proetz and his counsel, but the administrative law judge's recommended findings and conclusions were not included. Proetz contends the Board's decision is invalid because the decision did not contain the findings and conclusions in writing, the administrative law judge's decision was not served with the Board's decision, and the decision was served personally rather than by first-class mail.

Minn.Stat. § 14.62, subd. 1, requires that every agency decision shall be in writing and "shall include the agency's findings of fact and conclusions on all material issues." Subdivision 1 further requires that a copy of the decision and order be served by first-class mail.

■ Proetz's argument that the Board's decision is invalid because it did not include its findings and conclusions is without merit. There is no valid reason a Board cannot adopt the findings of an administrative law judge when it agrees with them. To require that accurate findings be redrafted would be elevating form over substance.

While we agree that the preferred practice would have been to serve the administrative law judge's findings and conclusions along with the final decision, we find no reversible error. The administrative law judge's findings had already been served upon Proetz, and he made no claim of prejudice. *See Whipple v. Mahler,* 215 Minn. 578, 10 N.W.2d 771 (1973) (no improper service where neither defendant claimed to have been misled by the improper arrangement of papers).

■ Finally, we find no reversible error because Proetz and his attorney were served personally rather than by first-class mail.

[E]ven where personal service is required by statute, we have long held that, where service is made by mail and actually reaches the party to be served within the required period of time, it is equivalent to personal service.

*State v. Pierce,* 257 Minn. 114, 100 N.W.2d 137, 138 (1959). Certainly the converse is true.

### II

■ Proetz contends that the six-year revocation of his license and the imposition of costs were grossly disproportionate and unfair. The assessment of sanctions by a professional board is discretionary. *In the Matter of Roger Schultz, D.D.S.,* 375 N.W.2d 509 (Minn.Ct.App.1985). Absent an abuse of discretion, the Board's decision

will not be disturbed on appeal. *In re Haugen*, 278 N.W.2d 75, 80 n. 10 (Minn. 1979). Here, the Board had suspended Proetz' license on two occasions and then found that he continued to engage in prohibited practices. We find no abuse of discretion.

■ Proetz also contends that the order forbidding reapplication for six years exceeds the Board's statutory authority. Minn.Stat. § 148.10, subd. 1, provides that the Board may revoke a license to practice chiropractic for any one of 11 reasons. Subdivision 1 does not place a time limit on the Board's authority. Minn.Stat. § 148.10, subd. 2, provides that the Board *"may, at any time within two years of * * * revocation * * * by majority vote, issue a new license * * *." Id.* (emphasis added). Subdivision 2 allows the Board by simple vote to bypass standard license application and examination procedures. The order in this case is directed toward the applicant. It does not purport to limit the power of the Board.

### III

The Board ordered Proetz to pay all costs imposed by it in the proceedings resulting in disciplinary action. Proetz contends that Minn.Stat. § 148.10, subd. 3(c), which provides for the imposition of costs, is unconstitutionally vague, that costs were imposed without a hearing, and that the Board applied the statute retroactively and in violation of Article I, Section 8, of the Minnesota Constitution.

Minn.Stat. § 148.10, subd. 3 (1984), provides:

In addition to the other powers granted to the board under this chapter, the board may, in connection with any person whom the board, after a hearing, adjudges unqualified or whom the board, after a hearing, finds to have performed one or more of the acts described in subdivision 1:

    \*      \*      \*      \*      \*      \*

(c) Require payment of all costs of proceedings resulting in the disciplinary action.

*Id.*

■ A statute is impermissibly vague if a person "of common intelligence must necessarily guess at its meaning." *Matter of the Welfare of A.K.K.*, 356 N.W.2d 337, 343 (Minn.Ct.App.1984). There is no need to guess at the meaning of subd. 3(c). "Costs" has been defined by case law. *See, e.g., Tank v. Clark*, 179 Minn. 587, 229 N.W. 579 (1930). "Proceedings" is the hearing referred to in subdivision 3. We find no vagueness.

■ The costs assessed against Proetz were the Board's charges for the services of the administrative law judge and the court reporter. Proetz did not object to the Board regarding the accuracy of the charges. He claims he was denied due process because the costs were not litigated. We do not agree. Proetz could have objected to the Board but failed to do so. On review we will consider only whether the Board abused its discretion in assessing costs. Requiring payment for the services of the administrative law judge and a court reporter was not an abuse of discretion. Proetz states that Minn.Stat. § 148.10, subd. 3(c), became effective on June 15, 1983, and argues that it was applied retroactively. The hearing for which costs were assessed began on December 7, 1984. We find no retroactive application of Minn.Stat. § 148.10, subd. 3(c). *See Reynolds v. United States*, 292 U.S. 443, 449, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934) (a statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment).

Proetz also claims that the imposition of costs violates the state constitutional guarantee of justice "freely and without prejudice." Minn.Const. art. I, § 8. "Everyone ought have justice freely and without purchase"

is as old as Magna Charta, and has a well-understood historical meaning. It

was aimed against the corrupt practice of taking bribes and exacting illegal fees in the administration of justice, and never meant that a litigant should have the right to conduct his suit in court without cost.

*Lommen v. Minneapolis Gaslight Company,* 65 Minn. 196, 68 N.W. 53, 54 (1896). Costs of proceedings resulting in discipline may be imposed without violating Article I, Section 8.

## IV

Proetz contends Minn.Stat. § 148.10, subd. 1, is unconstitutionally vague and overbroad. It states, in pertinent part:

The state board of chiropractic examiners may refuse to grant, or may revoke, suspend, condition, limit, restrict or qualify a license to practice chiropractic, or may cause the name of a person licensed to be removed from the records in the office of the clerk of the district court for:

\*      \*      \*      \*      \*      \*

(10) Unprofessional conduct;

\*      \*      \*      \*      \*      \*

For the purposes of clause (10), unprofessional conduct means any unethical, deceptive or deleterious conduct or practice harmful to the public, any departure from or the failure to conform to the minimal standards of acceptable chiropractic practice, or a willful or careless disregard for the health, welfare or safety of patients, in any of which cases proof of actual injury need not be established. Unprofessional conduct shall include, but not be limited to, the following acts of a chiropractor:

(a) Gross ignorance of, or incompetence in, the practice of chiropractic;

(b) Making suggestive, lewd, lascivious or improper advances to a patient;

(c) Performing unnecessary services;

(d) Charging a patient an unconscionable fee or charging for services not rendered;

(e) Directly or indirectly engaging in threatening, dishonest, or misleading fee collection techniques;

(f) Perpetrating fraud upon patients, third party payers, or others, relating to practice of chiropractic; and

(g) Any other act that the board by rule may define.

*Id.*

Again we note that a statute is impermissibly vague if persons "of common intelligence must necessarily guess at its meaning." *A.K.K.,* 356 N.W.2d at 343. In considering whether Minn.Stat. § 148.57, subd. 3, regulating the practice of optometry, constituted an unconstitutional delegation of power, the supreme court stated:

The legislature need not enumerate what specific acts or omissions constitute unprofessional conduct since the phrase "unprofessional conduct" itself provides a guide for, and a limitation upon, the exercise by the board of its power to revoke a practitioner's license.

*Reyburn v. Minnesota State Board of Optometry,* 247 Minn. 520, 78 N.W.2d 351, 355 (1956). It then added:

Since "unprofessional conduct" is of itself, without amplification, a sufficiently definite ground upon which the board may revoke or suspend a license, it cannot reasonably be maintained that such a statutory provision becomes invalid simply because the legislature has expressly defined certain acts as unprofessional conduct but has left it to the board to determine what additional and other acts and omissions are "unprofessional." It would be unreasonable to hold that, when the legislature prescribes only the basic standard of "unprofessional conduct," the statute is sufficiently definite to be valid but that it is invalid when the legislature attempts a partial enumeration of what constitutes such conduct.

*Id.* at 356. Minn.Stat. § 148.10, subd. 1, is not unconstitutionally vague.

■■■ "A statute is overbroad when its terms sweep too far, regulating conduct which must be permitted." *City of Mankato v. Fetchenhier,* 363 N.W.2d 76, 78

(Minn.Ct.App.1985). The overbreadth doctrine allows a person to challenge an overly broad statute even though his or her conduct is clearly unprotected and could be prescribed by a law drawn with the requisite specificity. *Id.* If, however, the statute regulates conduct that is not protected by the first amendment, a person cannot complain that the statute could conceivably be impermissibly applied to others. *Id.*

The Board concluded that Proetz distributed prohibited advertising in violation of Minn. R. 2500.0400 (1985), which reads in part:

> The law prohibits the use of the terms "cure" or "guarantee to cure" or similar terms and declares such to be fraudulent and misleading to the general public.
>
> \* \* \* \* \* \*
>
> The advertising by any means of chiropractic practice or treatment or advice in which untruthful, improbable, misleading or impossible statements are made is obviously contrary to the law.

*Id.*

■■■ "Clearly, false or misleading 'commercial speech' may be forbidden." *Advance Training Systems v. Caswell Equipment Company*, 352 N.W.2d 1, 11 (Minn. Ct.App.1984). Thus, the statute regulates conduct that is not protected by the first amendment and therefore is not overbroad.

## V

■■■ The Board's decision is based in part upon claims that Proetz violated numerous terms of the 1982 order. Proetz contends that the prior restrictions on his practice were contrary to the interests of his patients and the public. Proetz's complaint is untimely. The order was issued by the Board on January 18, 1982. The appeal period has long since passed. In any event, the order specifically directs Proetz to refer patients whom he determines need more care than he is permitted to provide.

## VI

Finally, Proetz contends that the record does not sustain the findings. Proetz does not specifically state which of the 75 findings are unsupported but, rather, incorporates by reference a memorandum submitted to the administrative law judge before the criticized findings were made. By incorporating the earlier memorandum, Proetz is, in effect, seeking to have this court review the case de novo.

■■■ The administrative law judge determined whether the Board proved its claims by a preponderance of the evidence. On appeal this court applies the "substantial evidence" test. *See, e.g., Northern Messenger, Inc. v. Airport Courier, Inc.,* 376 N.W.2d 285 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Jan. 17, 1986). We also adhere to the "fundamental concept that decisions of administrative agencies enjoy a presumption of correctness \* \* \*." *Yellowbird, Inc. v. MSP Express,* 377 N.W.2d 490, 493 (Minn.Ct.App.1985) (quoting *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977)). Proetz's failure to specify which findings are unsupported by substantial evidence places an intolerable burden upon the court. The practice is poor and should not be repeated. Nonetheless, we have reviewed the record and conclude that substantial evidence supports the Board's decision.

## DECISION

The Minnesota Board of Chiropractic Examiners did not commit reversible error when it issued and served its order on Proetz. The Board did not abuse its discretion when it revoked Proetz's license, imposed costs, and ordered that he could not reapply for a license before August 13, 1991. The Board did not err in imposing costs. Minn.Stat. § 148.10 is not unconstitutionally vague or overbroad. The period for appealing the 1982 order has passed. Substantial evidence supports the Board's decision.

Affirmed.