### In the Matter of MINNIKKA PROPERTIES, LLC.

#### No. A12–2126.

Court of Appeals of Minnesota.

July 29, 2013.

Gregory E. Korstad, Julie N. Nagorski, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, MN, for relator Minnikka Properties, LLC.

Lori Swanson, Attorney General, Ann E. Cohen, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Pollution Control Agency.

Considered and decided by WORKE, Presiding Judge; HALBROOKS, Judge; and LARKIN, Judge.

## OPINION

HALBROOKS, Judge.

Relator Minnikka Properties, LLC challenges the Minnesota Pollution Control Agency's (the MPCA) final administrative order requiring Minnikka to remove waste-tire shreds from driveways that it constructed on its property. Minnikka argues that the MPCA (1) erred by concluding that its use of waste tires is not beneficial use under Minn. R. 7035.2860 and (2) denied Minnikka due process by providing insufficient notice of the alleged violation. Because the MPCA's final order is supported by substantial evidence and is unaffected by legal error and because Minnikka's due-process claim is without merit, we affirm.

## FACTS

Minnikka is a corporation owned and managed by Monte Niemi. Niemi also owns First State Tire Disposal (FSTD), a waste-tire processing facility that sells shredded tires for use in construction projects. In 2010, Minnikka purchased land in Brunswick near Harbor Road that Niemi planned to develop for his own residence. Niemi constructed two driveways on the property to create access to public roads. To build the driveways, Minnikka excavated an area 898 feet long, 18 feet wide, and up to 10 feet deep and filled the area with approximately 200 semi-truck loads of tire shreds supplied by FSTD.

Minn. R. 7035.2860, the beneficial-use rule, allows waste-tire use in land construction under two limited circumstances. Waste-tire parts can be used as lightweight fill in public-road construction if the tire parts are wrapped in fabric, pursuant to Minnesota Department of Transportation (MnDOT) specifications. Minn. R. 7035.2860, subp. 4(G). They can also be used as a one-to-one substitute for conventional construction aggregate. *Id.,* subp. 4(H). Under either circumstance, the waste tires cannot be used in quantities exceeding accepted engineering or commercial standards. *Id.,* subp. 2(E).

In July 2010, the MPCA began receiving complaints concerning Minnikka's Harbor Road project. One local resident complained that hundreds of loads of shredded tires were being used to fill a 20– to 25–foot trench on the property and that some were in standing water. Curtiss Hoffman, an inspector with the MPCA, scheduled a site visit with Niemi and asked Niemi to bring a copy of the project's plan to the site visit.[1]

1. Inspector Hoffman presumed that Niemi would have a copy of that plan because, as a condition of its facility permit, FSTD is required to obtain a project plan or a signed statement from each of its customers showing that the waste-tire products purchased from FSTD would be used according to the benefi-

Inspector Hoffman visited the project site three days later, but could not observe the waste-tire material because the trenches had been filled in and covered. During the inspection, Niemi provided Inspector Hoffman with a design plan that had been prepared the day before by Richard Larson, a retired engineer who works as a consultant to FSTD. The plan called for 8–10 feet of shredded waste tires as "light weight fill" that would be encapsulated by geotextile fabric.

Inspector Hoffman provided Larson's plan to MPCA engineer Daniel Vleck, who noticed that it was dated as having been prepared the day before the site visit, a detail that Inspector Hoffman had overlooked. Larson explained that Niemi had called him several weeks earlier about the project, but admitted that he prepared the driveway plan after the project was complete and without visiting the construction site. Larson relied on general information on the Internet in devising the plan.

Subsequent to the site visit, the MPCA received additional complaints from citizens who insisted that Larson's plan had not been followed, alleging that Minnikka had not used fabric to encapsulate the waste-tire shreds and that the excavation was deeper than 8–10 feet. Inspector Hoffman also received photographs taken by Brandon McGaw, a conservation officer with the Minnesota Department of Natural Resources, showing that the tire shreds that filled the excavated site were not encapsulated in fabric. The MPCA asked Minnikka to respond to these allegations. Niemi replied that Minnikka did not use fabric to isolate the tire shreds from the soil but had used just 8–10 feet of waste tires as provided in the project plan.

In December 2010, the MPCA issued a proposed administrative order, concluding cial-use rule and not as general construction

that Minnikka's use of tire shreds in its Harbor Road driveways failed to constitute beneficial use and therefore required a case-specific beneficial-use determination. Minnikka refused to submit a case-specific application, asserting that its use of tire shreds in past projects justified its use here.

In November 2011, the MPCA issued a revised proposed administrative order, ordering the removal of the tire shreds from the driveways. The MPCA specifically concluded that the driveway project did not qualify as beneficial use under either subpart 4(G) of the beneficial-use rule, because Minnikka failed to use fabric to encapsulate the waste tires, or subpart 4(H), because the use of the tire shreds as an aggregate substitute "exceeds any reasonable use of aggregate and is more consistent with the use of waste tires for general fill purposes, or is in fact an effort to dispose of excess waste tire material."

Minnikka requested a contested hearing on the issue of whether its Harbor Road driveway project qualified under subpart 4(H) of the beneficial-use rule, asserting that it used the tire shreds as frost-heave protection. An administrative-law judge (ALJ) held a three-day contested hearing in which 16 witnesses testified. The testimony and exhibits admitted at the hearing focused on the depth of the tire shreds in the Harbor Road driveways, whether the driveway soils are susceptible to frost heaves, and engineering standards for use of tire shreds as frost-heave protection.

Several local residents testified that they observed the driveway excavation and that it was deeper than 8–10 feet. Victoria Fore, who owns the adjacent property, testified that the excavated trench was more than ten feet deep and that a "semi" could have fit in there. Darryl McIalwain,

fill.

a highway-construction worker, testified that the excavation was likely deeper than ten feet and that the soils on the site were "perfect road material," not at risk of frost heaves. Dennis McNally testified that the excavation was 12–15 feet deep and that the site's soils were "hardpan." Niemi testified that he used tire shreds at depths up to ten feet and had done so in past projects without raising MPCA's concern.

Daniel Vleck, an MPCA engineer who specializes in landfill and frost protection, testified that "there is no need to have a 10–foot layer of shreds in a driveway" for frost protection. He further testified that the standards of the American Society for Testing Materials (ASTM), a guide for engineers, provide that a layer of waste-tire material approximately 6 to 18 inches deep is sufficient to provide frost protection in a road. Blake Nelson, a geotechnical engineer with MnDOT who specializes in soil areas needing correction and who devised the MnDOT specifications for tire-shred use in road construction, also testified as an expert witness. Nelson testified that the MnDOT standard for frost protection is 6 to 18 inches with tire shreds and that, while two feet may be used, ten feet is "definitely not" necessary. He stated that he had never heard of a single project in Minnesota or out-of-state requiring ten feet of fill for frost protection.

Minnikka called Anthony Francis, an engineer with Northern Technologies Inc. (NTI), to testify about a report that NTI completed after taking soil borings from the completed project site. Francis testified that areas of the soil on Minnikka's property were moderately to highly frost susceptible, but conceded that NTI failed to perform any laboratory analysis of the soil borings it took. Minnikka also called Matthew Oman of Braun Intertec Corporation, who testified concerning a report that he prepared based on NTI's report

and other general information that he located on the Internet. Oman testified that the soils at the Harbor Road site were likely susceptible to frost but that ten feet of tire shreds exceeded the most conservative estimate of what is necessary for protection against frost. Richard Larson was not offered as an expert witness, but he testified that he planned for 8–10 feet of frost protection based on his experience and "[did] not care" what MnDOT or ASTM recommend.

The ALJ issued findings of fact, conclusions, and a recommendation that the MPCA affirm and implement the agency's proposed administrative order. The ALJ found "[n]o relevant and reliable evidence in the record" supporting the use of ten feet of tire shreds as frost-heave protection. Accordingly, the ALJ concluded that Minnikka violated Minn. R. 7035.2860 and Minn.Stat. § 115A.904 by utilizing tire shreds in the Harbor Road driveways "in quantities that exceed accepted engineering standards" without a case-specific beneficial-use determination. The ALJ found that the MPCA's witnesses were "credible in all material respects" and "highly qualified experts" who each "testified to a reasonable degree of scientific certainty with regard to their professional examinations and opinions."

The ALJ found that Larson's testimony was "not credible or scientifically based." The ALJ gave little weight to Francis's testimony due to its lack of reliability and found that the Braun report actually supported the MPCA's position because it recommended against excavating to the depths that Minnikka did. The ALJ gave no weight to evidence of projects that Minnikka performed prior to the adoption of the beneficial-use rule, explaining: "When a law or rule changes, what may have been permissible and legal before the change is no longer permissible after the change.

Mr. Niemi's 'napkin' projects between 1986 and 2004 are irrelevant to this proceeding."

The MPCA adopted the ALJ's findings and conclusions and issued a final order, directing Minnikka to remove the tire shreds from the Harbor Road property and to dispose of them properly. Minnikka filed a certiorari petition, seeking judicial review of the final agency decision.

## ISSUES

I. Did the MPCA err by determining that Minnikka's use of tire shreds was unlawful?

II. Was Minnikka denied procedural due process?

## ANALYSIS

We may reverse or modify an administrative decision if the substantial rights of the petitioner may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are affected by an error of law, unsupported by substantial evidence in view of the entire record, or arbitrary or capricious. Minn. Stat. § 14.69(d)–(f) (2012). "Upon review, our court must exercise judicial restraint, lest we substitute our judgment for that of the agency." *In re Eller Media Co.'s Applications for Outdoor Adver. Device Permits in the City of Mounds View*, 664 N.W.2d 1, 7 (Minn.2003). An administrative agency's decision enjoys presumptive correctness, and we defer to the agency's expertise and specialized knowledge in the field. *In re Annandale & Maple Lake NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 513 (Minn.2007). "We will not disturb an agency's decision as long as the agency's determination has adequate

support in the record as required by the substantial evidence test." *Eller Media*, 664 N.W.2d at 7.

## I.

The question this appeal presents is whether the MPCA erred by determining that Minnikka's use of tire shreds in the construction of two private driveways failed to qualify as a beneficial use under Minn. R. 7035.2860, subp. 4(H). Minnesota law prohibits "disposal of waste tires in the land ... except for beneficial uses of tire-derived products designated by the commissioner." Minn.Stat. § 115A.904.[2] A waste tire is a tire "no longer suitable for its original intended purpose." Minn.Stat. § 115A.90, subd. 11 (2012). Under its regulatory authority, the MPCA promulgated the beneficial-use rule which designates 17 uses of solid waste as "standing beneficial uses." Minn. R. 7035.2860, subp. 4. Standing beneficial uses are permitted without any notice to the MPCA of that use. *Id.* All other solid-waste use is prohibited, absent a case-specific beneficial-use determination by the MPCA. *Id.*, subp. 5.

The rule designates two standing beneficial uses of waste-tire parts. Subpart 4(G) allows tire shreds to be used as lightweight fill in public roads if they are encapsulated by fabric in accordance with engineering practices developed for roadways by MnDOT. *Id.* (citing Minn.Stat. § 115A.912, subd. 4). Subpart 4(H) allows tire chips to be "used as a substitute for conventional aggregate in construction ... when the ratio of [the] substitution is no greater than one to one by volume." *Id.*, subp. 4(H). The beneficial-use designation under subpart 4(H) does not apply to the "use of tire chips as general construction fill or clean fill." *Id.* The rule does not

---

**2.** Section 115A.904 was amended in 2012 to reflect the existence of the beneficial-use rule,

Minn. R. 7035.2860, promulgated in 2004.

define tire shreds or tire chips. All other use of waste tires is prohibited by law and requires application for a case-specific beneficial-use determination from the MPCA. Minn.Stat. § 115A.904; Minn. R. 7035.2860, subp. 5.

In addition, to qualify as a beneficial use, "solid waste must not be used in quantities that exceed accepted engineering or commercial standards. Excess use of solid waste is not authorized by this part and is considered disposal." Minn. R. 7035.2860, subp. 2(E). Disposal of solid waste is unlawful absent a permit. *See* Minn. R. 7001.3050 (2011).

Minnikka insists that the central question on appeal is whether the beneficial-use rule requires "an engineered design document in advance of the use of [waste tires]" under subpart H. We disagree. The dispositive issue before the ALJ concerned the quantity of waste tires that Minnikka used and whether that amount conformed to accepted engineering standards. The record does not support Minnikka's assertion that the MPCA's decision turned on the existence of a project plan at the time of the excavation. We therefore address whether substantial evidence supports the ALJ's findings regarding the quantity of tire shreds that Minnikka used and the engineering standards for frost-heave protection.

## A. Substantial Evidence

■ The ALJ's finding that Minnikka used tire shreds in depths up to ten feet in the driveway construction is supported by Niemi's testimony and that of several local residents. The ALJ also found that no relevant or reliable record evidence supports using ten feet of waste-tire material for frost-heave protection. We agree. Expert testimony from Vleck and Nelson, who were deemed "credible in all material respects" and who testified that less than two feet of tire fill is necessary for frost protection, provides ample support for this finding. And none of Minnikka's expert witnesses testified to the contrary. Larson, who was not offered as an expert witness, did not cite any scientific material in support of his recommendation of ten feet for frost protection, and, consequently, the ALJ deemed his testimony to be unreliable. On this record, we conclude that substantial evidence supports the ALJ's finding that Minnikka used more tire shreds than were necessary to protect its driveways from frost heaves.

■ Minnikka suggests that the ALJ's decision as to what testimony to credit is a legal issue requiring de novo review. But it is a well-settled principle that "[w]e defer to an agency decisionmaker's conclusions regarding conflicts in testimony, the weight given to expert testimony and the inferences to be drawn from testimony." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001). Minnikka has failed to cite any legal authority supporting de novo review of those determinations.

■ Minnikka also contends that the MPCA's decision was arbitrary and capricious because it rejected Larson's testimony and credited the testimony of government engineers. This argument lacks a basis in the law. An ALJ's decision is not arbitrary and capricious when it credits one opinion when there are differing opinions on a matter. *In re Review of 2005 Annual Automatic Adjustment of Charges for All Elec. & Gas Utils.*, 768 N.W.2d 112, 123 (Minn.2009). Furthermore, because credibility determinations rest with the ALJ, not the appellate courts, we defer to the ALJ's decision to discredit Larson's lay testimony and to credit Vleck's and Nelson's expert testimony.

In sum, substantial evidence supports the ALJ's determination that Minnikka's use of tire shreds to a depth of ten feet does not qualify as beneficial use because that amount exceeds accepted engineering standards for frost-heave protection, in violation of Minn. R. 7035.2860, subp. 2. The MPCA did not err by concluding that Minnikka disposed of waste tires in violation of Minn.Stat. § 115A.904.

## B. Errors of law

Minnikka asserts that the MPCA imposed requirements on Minnikka that are not in the rules by (1) requiring an engineering plan, (2) imposing a size requirement on its waste-tire parts, (3) revising the rules during this enforcement action, and (4) acting inconsistently by approving ten feet of tire shreds in its past projects. These arguments mischaracterize the record and the agency's decision.

### 1. An engineered plan

Minnikka asserts that the MPCA required Minnikka to have an engineered plan in advance of its waste-tire use. To support this assertion, Minnikka points to the testimony of Heidi Croenig, MPCA's compliance and enforcement supervisor. Croenig confirmed several times throughout her testimony that there is no requirement in the rules for an engineered plan. She clarified, as a general matter, that when she investigates a project that has several hundred feet of tire fill that is otherwise unexplained, she would like to see a plan showing the purpose for the tires. This does not establish that the MPCA interprets subpart 4(H) as requiring an engineered plan or that it required Minnikka to have one. The MPCA asked to see the engineered plan that FSTD was required, as a condition of its permit, to obtain from Minnikka in advance of supplying waste-tire materials to it. But the absence of that plan during excavation did not establish the basis for Minnikka's violation. Rather, the MPCA's order was based on Minnikka's failure to sufficiently rebut the ample evidence that it had used tire shreds in amounts that violated the beneficial-use rule.

### 2. Size of shreds

Minnikka argues that the MPCA found Minnikka to be in violation of the beneficial-use rule because it used tire shreds instead of tire chips. In its proposed administrative order, the MPCA found

> that the use of waste tire material for the road project does not meet [subpart 4(H) standing use] because the material consists largely of tire shreds, not chips, and because while waste tires shreds/chips might substitute for aggregate in certain drainage applications, the volume of the waste tires shreds/chips used for this project exceeds any reasonable use of aggregate.

This proposed finding reveals that, regardless of whether Minnikka used chips, shreds, or a combination of the two, it used that material in excess of what was permissible under the beneficial-use standards. The MPCA's final order reflects that Minnikka's violation was under subpart 2 for using waste-tire materials in excess of what was required for frost protection and did not turn on any distinction between chips and shreds.

### 3. Rule revision

Minnikka accuses the MPCA of revising the beneficial-use rule outside of the rulemaking process and applying a new rule to Minnikka. To support its allegation, Minnikka points to a single draft document prepared by Vleck, outlining his "thoughts" on "appropriate uses of tire shreds and chips and appropriate quantities." It contemplates the potential use of

geotextile fabric in landscaping, the appropriate depth of lightweight fill, and a definition of "tire chip," among other matters. The document is marked "draft," contains neither a header, title, nor addressee, includes hand-written notes in the margins, and does not appear to have been distributed to anyone. This document does not constitute a rule revision. There is no evidence whatsoever indicating that the MPCA either revised the beneficial-use rule outside the rulemaking process or imposed requirements on Minnikka that are not included in the rule.

### 4. Past projects

■ The ALJ concluded that the evidence concerning projects that FSTD and Niemi completed prior to the adoption of the beneficial-use rule was irrelevant to this enforcement action. We agree. On appeal, Minnikka again points to its projects that pre-date the beneficial-use rule as evidence that the MPCA's application of the rule here was the result of an "unpublished" and "sudden" change to the rule. But evidence of what projects occurred before the beneficial-use rule existed does not demonstrate that the MCPA's application of the beneficial-use rule here was inconsistent with other applications of the rule. The MPCA's decision is supported by substantial evidence, is neither arbitrary nor capricious, and is unaffected by any error of law.

### II.

■ Minnikka argues that the MPCA provided insufficient notice of the alleged violation of the beneficial-use rule. We review de novo the procedural due process afforded a party. *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216, 220 (Minn.App.1999), *review denied* (Minn. July 28, 1999). Both the United States Constitution and the Minnesota Constitution provide that no person shall be deprived of property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. Due process requires notice and the opportunity for a hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

The record belies Minnikka's assertion that it was not properly informed of its violation prior to the administrative hearing. It was the MPCA's proposed administrative orders that put Minnikka on notice of the violation of Minn.Stat. § 115A.904, for failing to qualify as beneficial use under Minn. R. 7035.2860. And it was that notice that prompted Minnikka to request a contested hearing on the application of subpart 4(H) to its driveway project. This met the due-process requirements of notice and an opportunity to be heard.

Minnikka contends, however, that it was denied due process because the MPCA "changed its position" on Minnikka's compliance between July and December 2010. But the fact that the MPCA initially determined in July that Minnikka had complied with the beneficial-use rule, only to conclude that it had not complied following further investigation, does not undermine Minnikka's rights. And Minnikka's argument that the MPCA "changed its allegation at trial"—no longer alleging that Minnikka violated subpart 4(G) but that its project failed to qualify under subpart 4(H)—is also flawed. The MPCA's proposed administrative order discussed each of the beneficial-use designations that might apply to the driveways. It was Minnikka that requested a hearing only on whether it qualified under subpart 4(H). It is understandable, then, why the MPCA only addressed the application of subpart 4(H) at the hearing. Our careful review of the record yields nothing to persuade us

that Minnikka received a constitutionally deficient hearing.

## DECISION

Because Minnikka used waste tires in quantities that exceeded accepted engineering or commercial standards and failed to obtain a case-specific determination of beneficial use, the MPCA did not err by concluding that Minnikka violated Minn. R. 7035.2860 and Minn.Stat. § 115A.904.

**Affirmed.**