*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0721**

In the Matter of Kayvon Behnam, D. C., License No. 3644

**Filed February 1, 2016
Affirmed
Peterson, Judge**

Minnesota Board of Chiropractic Examiners

Lori Swanson, Attorney General, Jennifer Coates, Jennifer C. Middleton, Assistant Attorney General, St. Paul, Minnesota (for respondent Board of Chiropractic Examiners)

Kayvon Behnam, D.C., Red Wing, Minnesota (pro se appellant)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Chutich, Judge.

# UNPUBLISHED OPINION

**PETERSON**, Judge

Relator challenges respondent's decision to suspend his license, arguing that (1) the record does not support the preliminary suspension of his license, and (2) the final decision is based on findings that are not supported by the record and includes discipline that is too severe. We affirm.

## FACTS

Relator Kayvon Behnam operated a chiropractic clinic for 17 years. After receiving a credible complaint, respondent Minnesota Board of Chiropractic Examiners (the Board)

issued an order temporarily suspending relator's license on January 29, 2015. An administrative-law judge (ALJ) then held a contested case hearing on the matter on February 27, 2015.

At the hearing, relator admitted that while he was dating his wife before they were married, he provided chiropractic treatment to her. Relator also admitted that he began treating a female employee, S.L., in October 2013 and that they engaged in a sexual relationship beginning in August 2014 that continued until the date of the hearing. Another female employee, B.B., testified that relator required all employees to receive chiropractic care from him, that he hired only female employees, and that it was his standard policy to require all females to disrobe from the waist up and to wear backless gowns during appointments. The "General Procedures" document that relator provided to his employees stated that "[i]t is necessary that you be under regular chiropractic care" and "[y]our personal chiropractic care is therefore complimentary and a job benefit." An employee manual encouraged employees and their immediate family members to receive regular and complimentary chiropractic care from relator.

Before the contested case hearing resumed on the second day, relator stipulated to entry of judgment and admitted that he "engaged in a sexual relationship with a patient and . . . violat[ed] Minn. Stat. [§] 148.10, subd. 1(a)(11)[,] e(2) (2014)." Relator stipulated that the record included "all evidence and testimony admitted at the February 27, 2015 hearing." Based on the full record, the ALJ issued an order recommending imposition of discipline.

2

The Board then held a disciplinary hearing on March 24, 2015, at which relator testified. The Board decided that there were grounds for discipline and unanimously voted to suspend relator's license for five years, with all but 18 months stayed, impose a $1,500 fine, and require relator to receive further training.

Relator petitioned pro se for a writ of certiorari. He argues on appeal that, although he acknowledged violating Minn. Stat. § 148.01 (a)(11), and (e)(2), the Board "improperly made findings to suggest predatory behavior that was wholly unsubstantiated. The [Board], in turn, used these findings as a basis for the immediate suspension and as a basis for a far harsher punishment than similarly situated individuals have received."

**D E C I S I O N**

This court may reverse or modify an administrative decision if the petitioner's substantial rights are prejudiced because the findings, inferences, conclusion, or decisions are affected by an error of law, unsupported by substantial evidence, or arbitrary or capricious. Minn. Stat. § 14.69(d)-(f) (2014). "An administrative agency's decision enjoys presumptive correctness, and we defer to the agency's expertise and specialized knowledge in the field. We will not disturb an agency's decision as long as the agency's determination has adequate support in the record as required by the substantial evidence test." *In re Minnikka Props., LLC*, 834 N.W.2d 572, 577 (Minn. App. 2013) (citations and quotation omitted). "An ALJ's decision is not arbitrary and capricious when it credits one opinion when there are differing opinions on a matter." *Id.* at 578.

Relator's brief generally addresses three issues. Relator argues that (1) his license should not have been temporarily suspended because he did not demonstrate an imminent

3

risk of harm to others as required by Minn. Stat. § 214.077(a) (2014); (2) the evidence does not support the Board's findings; and (3) the discipline imposed by the Board was too severe compared to other similar cases.

*Temporary Suspension*

Relator argues that the Board lacked a proper factual basis for temporarily suspending his license. The Board must suspend a license when it "receives a complaint regarding a regulated person and has probable cause to believe continued practice by the regulated person presents an imminent risk of harm." Minn. Stat. § 214.077(a). Relator contends that the temporary suspension of his license was improperly based on allegations made by his estranged spouse, which lacked credibility, and, without those allegations, it could not be demonstrated that he "present[ed] an imminent risk of harm."

We reject this claim for three reasons. First, the issue was not raised before the ALJ or the Board, and we will not address on appeal an issue that was not raised before the decision-making body below. *See McNamara v. Office of Strategic and Long Range Planning*, 628 N.W.2d 620, 627 (Minn. App. 2001) (declining to address an administrative-law issue on appeal that "was not argued before the ALJ"), *review denied* (Minn. Aug 22, 2001). Second, the issue of the propriety of relator's conduct has now been the subject of a full contested hearing subject to a higher standard of proof than that necessary for a temporary suspension; it is therefore an improper time to challenge the Board's initial decision to temporarily suspend relator's license. *See Kottschade v. City of Rochester*, 760 N.W.2d 342, 350 (Minn. App. 2009) ("Generally, when an event makes . . . a decision on the merits unnecessary, the appeal should be dismissed as moot."), *review denied* (Minn.

4

Apr. 29, 2009). Third, relator does not cite any facts that provide grounds for rejecting the allegations of his estranged wife. The fact that the witness is relator's estranged wife does not, by itself, support a determination that she is an unreliable or untruthful witness.

## *Evidentiary Support for Decision*

Relator's license was suspended for "unprofessional conduct," in violation of Minn. Stat. § 148.10, subd. 1(a)(11), (e)(2), which prohibits "engaging in conduct with a patient that is sexual or may reasonably be interpreted by the patient as sexual, or in any verbal behavior that is seductive or sexually demeaning to a patient." Relator argues that the evidence presented was insufficient to establish a statutory violation.

> A decision is supported by substantial evidence when it is supported by (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety.

*Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 464 (Minn. 2002).

The record, which consists of testimony and documentary evidence from the first day of the contested hearing before the ALJ and relator's stipulation to conduct that amounts to a violation of section 148.10, provides substantial evidence to support the Board's decision. Relator admitted that he had a sexual relationship with a patient who later became his wife, engaged in a sexual relationship with S.L. while she was an employee and patient, and offered free chiropractic care to his employees as a job benefit. B.B., a former employee, testified that it was office policy for female employees to disrobe

5

from the waist up when receiving chiropractic treatment, and that relator preferred for his employees to obtain chiropractic care from him. The record also includes an employee manual that required employees to be under regular chiropractic care. This record provides substantial evidence to show that relator engaged in sexual conduct or conduct that could reasonably be interpreted as sexual.

In arguing that the record does not support the Board's decision, relator asserts facts that, although supported by his testimony, are contradicted by other witnesses' testimony and are not supported by the record as a whole. This court "defer[s] to an agency decisionmaker's conclusions regarding conflicts in testimony." *Minnikka Props.*, 834 N.W.2d at 578. Relator also asserts that the ALJ's decision is arbitrary and capricious because the ALJ did not credit his testimony. But when there are differing opinions on a matter, an ALJ's decision is not arbitrary and capricious simply because it credits one opinion. *Id.*; *see Citizens Advocating Responsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006) (defining an agency ruling as arbitrary and capricious only if the agency "entirely failed to consider an important aspect of the problem . . . [or] offered an explanation that runs counter to the evidence").

### *Severity of Discipline*

Relator argues that the discipline imposed was too harsh compared to other disciplinary cases that involved similar conduct by licensees. Relator's brief describes the offenses and sanctions in 23 disciplinary cases decided by the Board, which relator argues involved more egregious violations by licensees but less severe sanctions than relator received.

"[T]he severity of an administrative sanction must reflect the seriousness of the violation." *In re Revocation of Family Child Care License of Burke*, 666 N.W.2d 724, 728 (Minn. App. 2003). But an appellate court does not issue sanctions, and our review is limited to whether the sanctions imposed constituted a clear abuse of discretion. *Id.*; *see Proetz v. Minn. Bd. of Chiropractic Exam'rs*, 382 N.W.2d 527, 532-33 (Minn. App. 1986) ("The assessment of sanctions by a professional board is discretionary", and "[a]bsent an abuse of discretion, the Board's decision will not be disturbed on appeal.") *review denied* (Minn. May 16, 1986)); *In re Henry Youth Hockey Ass'n, License No. 02795*, 511 N.W.2d 452, 456 (Minn. App. 1994) ("An administrative agency's assessment of penalties or sanctions is an exercise of its discretionary power."), *rev'd in part on other grounds*, 559 N.W.2d 410 (Minn. 1994).

In considering the severity of sanctions, appellate courts have reversed only when a license *revocation* was deemed too severe to reflect the seriousness of a violation. *See, e.g., Burke*, 666 N.W.2d at 728 (reversing and remanding for reconsideration of a lesser sanction when commissioner's decision revoking child-care license was not supported by the record and did not reflect consideration of proper statutory or regulatory factors); *In re Haugen*, 278 N.W.2d 75, 80 (Minn. 1979) (reversing overly severe sanction of revocation of real estate brokers' licenses when the sanctions were "completely uncalled for, based upon the evidence"); *In re Ins. Agents' Licenses of Kane*, 473 N.W.2d 869, 877-78 (Minn. App. 1991) (reversing revocation of license as overly severe sanction), *review denied* (Minn. Sept. 25, 1991).

The record supports the suspension of relator's license. Contrary to relator's contention that his conduct included only a single violation, relator's conduct has been sexually inappropriate within the meaning of the statute for an extended period and has involved multiple victims. Given the pervasiveness and duration of relator's violations, the Board's chosen sanction is not an abuse of its discretion. This disposition supports the public interest in ensuring proper conduct of licensed chiropractors. *See Padilla v. Minnesota State Bd. of Med. Exam'rs*, 382 N.W.2d 876, 887 (Minn. App. 1986) (recognizing "harm to the public if [acts in violation of a medical license] remain unpunished and the deterrent effect upon others" is unrealized), *review denied* (Minn. Apr. 24, 1986); *see* Minn Stat. § 214.001, subds. 1, 2 (2014) (stating that "regulation of certain occupations" must be for the purpose of serving "the safety and well being of the citizens of the state").

**Affirmed.**