*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0967**

In the Matter of the Administrative Penalty Order of Fay's Homestyle Catering

**Filed April 25, 2016
Affirmed
Connolly, Judge**

OAH Docket No. 82-0900-31453

Diana Longrie, Maplewood, Minnesota (for relator)

Lori Swanson, Attorney General, Cody M. Zustiak, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Relator challenges a $10,000 administrative penalty imposed by the commissioner of the Minnesota Department of Health (the MDH) based on relator's failure to obtain a license to provide catering services, arguing that the penalty amount is arbitrary and capricious. We affirm.

**FACTS**

On May 5, 2009, the MDH foodborne illness hotline received a complaint of gastrointestinal illness from an individual who attended an event at which relator, Fay Scott d/b/a Fay's Homestyle Catering, had prepared and served the food. On May 7, 2009 the City of Maplewood's health officer sent relator a letter informing her that (1) she was running a catering operation out of her home in violation of the MDH's food code and the City's ordinances; (2) a catering operation requires a food-establishment license issued by the health authority; and (3) she is "ordered to immediately discontinue all food service and/or catering activities within [her] home." Immediately after receiving the letter, relator discontinued preparing food for her catering business in her home.

On September 27, 2013, relator prepared and provided food service to a private homecoming picnic for faculty, staff, and alumni of the College of Education and Human Development at the University of Minnesota. Relator prepared the food in the kitchen at the Progressive Baptist Church. The MDH became aware of health issues associated with preparation of the food on October 1, 2013, after receiving reports of foodborne illness stemming from the meal served by relator. On October 3, 2013, the MDH representatives inspected the church where the food was prepared and interviewed relator and identified her as the caterer for the picnic. During the interview, relator's description of the timing of her cooking, "food-flow," and food handling was imprecise and inconsistent. The MDH determined that it had not previously inspected relator and that she had not sought licensure from either the MDH or the Minnesota Department of Agriculture since 2009. Relator stated that she had catered the same event at the University of Minnesota for the past several

2

years, and that she catered food that was prepared at the Progressive Baptist Church for approximately 20 events per year, such as weddings and funerals. The MDH inspectors found that the church kitchen had inadequate equipment to meet the needs of the picnic. Relator admitted to the MDH staff that she operated without the proper licensure. The MDH sent relator its October 3 inspection reports, which informed relator that she violated the licensure requirement of Minn. Stat. § 157.16 (2014). It is undisputed on appeal that relator's mishandling of the food caused the health issues on September 27, 2013.

As a result of the interview, the MDH contacted the Hennepin County Human Services and Public Health Department (the HCHSPHD) epidemiology unit, informing them of the reports. Further investigation by the HCHSPHD discovered that 22 attendees of the picnic met the definition of a "case." A "case" is "anyone that has vomiting or three or more loose stools in a 24-hour period and also consumed the food from that event." No patrons who reported illness visited a doctor and no stool samples were taken. Although the University of Minnesota informed relator of the illness complaints on September 28, 2013, relator failed to notify the MDH of the illnesses as required by law.

Relator had a food-manager certification effective May 29, 2013 through May 29, 2016. Relator also has a "ServSafe Certification" but testimony at trial indicated that being ServSafe certified is not enough to satisfy the safety certificate requirement to operate a catering business. Relator testified that she was under the impression that the licensure of the church kitchen at Progressive Baptist was current at the time she prepared the food for the picnic and that she did not need a license to prepare and serve food off site. This was

3

not correct. Moreover, it is undisputed that relator did not apply for the necessary license to do so until October 1, 2013, four days after the event at issue.

Following the investigations by both the MDH and the HCHSPHD, on November 19, 2013, the MDH held an enforcement forum (the forum) to decide an appropriate enforcement action for relator's violations of the food code. While not part of the Plan for the Use of Administrative Penalty and Cease and Desist Authority and Other Division-wide Enforcement Tools (the plan) adopted by the commissioner,[1] the forum occurs when the department

> pulls together persons who are involved in any particular potential enforcement case to discuss the specifics of the case, make a determination if enforcement action is appropriate and, if so, the type of action to be taken that [is] authorized by statute. If a penalty is involved, it also includes the calculation of the penalty.

The forum documented its decisions on a summary worksheet and determined that the penalty should be nonforgivable because operating without a license is classified as a "serious" violation under the plan and because "a non-forgivable penalty was deemed necessary to deter future violations."

In determining the base penalty, the forum considers "the deviation from compliance and the potential for harm regarding the particular violation and then use[s] a matrix that is Appendix B of the [p]lan to locate the appropriate penalty range according

---

[1] The plan includes a penalty calculation worksheet and instructions, including a penalty calculation matrix, to guide MDH staff in calculating administrative penalties. Under the plan, the performance of work without a required license is included in a list of "serious" violations.

to the matrix." The matrix has a vertical axis titled "Potential for Harm" and a horizontal axis titled "Deviation from Compliance." The forum determined that the potential for harm was severe because actual harm resulted when "at least 22 persons fell ill" and the deviation from compliance was severe because the operator failed to obtain a license to cater out of the church kitchen as required by statute. The matrix dictates that, in cases where the potential for harm and deviation from compliance were severe, a penalty of $5,000 to $10,000 is warranted. The forum determined the penalty should be at the highest possible range, a fine of $10,000 because "actual harm did occur when persons were made ill." The forum also determined that the base penalty should be adjusted upward an additional $10,000 in a nonforgivable penalty because the forum found that the violation was willful because relator had been previously ordered not to provide catering out of her home and without a license, indicating that she had a past history of violations. However, the forum participants reduced the penalty back to $10,000, the maximum penalty the law allows. Based on the forum's determination, the MDH issued an administrative protective order (APO) to relator on February 25, 2014 for the amount of $10,000. It is undisputed that this whole process was done without the issuance of a "ten-day letter" required by the plan.

Relator appealed the APO to an administrative-law judge (ALJ) on March 24, 2014, and the ALJ concluded that the amount of the penalty was unreasonable, considering the factors in Minn. Stat. § 144.991, subd. 1 (2014), and recommended the amount of the penalty be reduced to $2,500. Additionally, the ALJ based its determination on the MDH's failure to provide the ten-day letter as required by the plan and found that the failure to provide a ten-day letter was a violation of the process that the MDH relies upon to ensure

5

that its determinations are consistent and not arbitrary. The ALJ also found that the relator's actions were not a willful violation of the law.

On May 18, 2015, the commissioner issued an order adopting the Findings of Fact, Conclusions of Law and Recommendation of the ALJ with certain exceptions. The commissioner disagreed with the ALJ's recommendation to reduce the penalty to $2,500 and decided that the assessment of a $10,000 nonforgivable penalty was reasonable and ordered the APO due and payable.

## DECISION

Relator asserts the commissioner's assessment of a $10,000 nonforgivable penalty is unreasonable, arbitrary or capricious and requests this court modify the penalty as recommended by the ALJ. "Unless the [c]ommissioner's decision is arbitrary and capricious and without substantial support in the record, we shall affirm. When reviewing questions of law, however, we are not bound by the agency's decision, and we need not defer to the agency's expertise." *Dozier v. Comm'r of Human Servs.*, 547 N.W.2d 393, 395 (Minn. App. 1996) (citation omitted), *review denied* (Minn. July 10, 1996). "An administrative agency's assessment of penalties or sanctions is an exercise of its discretionary power. A reviewing court, therefore, may not interfere with the penalties or sanctions imposed by an agency decision unless a clear abuse of discretion is shown by the party opposing the decision." *In re Lawful Gambling License of Henry Youth Hockey Ass'n*, 511 N.W.2d 452, 456 (Minn. App. 1994) (citation omitted), *aff'd as modified* (Minn. Apr. 22, 1994) (unrelated issue modified); *see also Proetz v. Minn. Bd. of Chiropractic Exam'rs*, 382 N.W.2d 527, 532-33 (Minn. App. 1986) ("The assessment of sanctions by a

professional board is discretionary. Absent an abuse of discretion, the Board's decision will not be disturbed on appeal." (citation omitted)), *review denied* (Minn. May 16, 1986). "[An] agency's conclusions are not arbitrary and capricious so long as a rational connection between the facts found and the choice made has been articulated." *In re Review of 2005 Annual Automatic Adjustment of Charges for All Elec. & Gas Utils.*, 768 N.W.2d 112, 120 (Minn. 2009) (quotations omitted).

Relator asserts that (1) she was "double penalized" by the forum because the forum found that a nonforgivable penalty was appropriate and that the deviation from compliance was severe, both because people actually became ill following the picnic; (2) the commissioner ignored its own rules by failing to issue a ten-day letter; and (3) the commissioner did not balance or consider any other statutory factors in the assessment of the penalty other than the violation was seen as "serious" and "willful." We address each of these arguments in turn.

Double Penalty

Relator argues that she was "double" penalized for not having a license to cater the University of Minnesota picnic because her violation was determined to be "serious" warranting a nonforgivable penalty, and "serious" in regard to deviation from the compliance portion of the matrix. Relator neither points to any cases nor provides any legal argument in support of this theory to show that the commissioner's decision was arbitrary or capricious. We discern no reason why a penalty cannot be both "serious" for purposes of determining whether a penalty is forgivable or nonforgivable and "serious" for purposes of the deviation from compliance axis of the penalty matrix based on a failure to

7

obtain a license. As clearly stated in the plan, "[s]erious violations include conduct showing disregard for requirements or standards, or violations that present an actual or potential danger to public health." Because relator provides no legal support for the "double penalization" argument, we conclude that there is no basis for determining the commissioner's decision was arbitrary and capricious on a "double penalization" ground.

Ten-day Letter

Relator next argues that the commissioner's failure to comply with the procedural requirement of issuing the ten-day letter makes the commissioner's decision arbitrary and capricious. The plan states:

> Because of the seriousness and finality of a non-forgivable [APO], the department will provide written notice of the alleged violation(s) and an opportunity for response before issuing the non-forgivable order. The department will provide a letter, called a "ten-day letter," to the regulated party which clearly identifies the violation(s) and explains the underlying findings. The letter contains a request that the regulated party provide, within ten calendar days, any information that might impact the commissioner's determination of alleged violation(s). In addition, department staff may contact the regulated party by telephone to explain the violation(s) . . . . The regulated party's response to the ten-day letter will be considered before issuing a non-forgivable administrative penalty order.

No ten-day letter was sent by the MDH. Relator argues that "providing the ten-day letter in a [non-forgivable] penalty case is not only grounded in the concept of fairness, but the concept of due process as well." Relator claims that the commissioner's failure to provide relator with an opportunity to be heard, without explanation or reasoned judgment, renders the decision arbitrary and capricious.

8

To prevail on appeal, an appellant must show both error and prejudice resulting from the error. *Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975); *see Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn. App. 1993) (stating that the appellant bears the burden of demonstrating that error is prejudicial), *review denied* (Minn. June 28, 1993). While the MDH erred in failing to send a ten-day letter, relator has failed to show prejudice resulting from the error. Relator had ample opportunities to be heard in this case, including after the University of Minnesota informed her of the complaints against her on September 28, 2013, when relator attempted to obtain a license on October 1, 2013, and when the MDH representatives visited her at the church kitchen where she prepared the food, all of which occurred before the commissioner issued the APO. Further, after the issuance of the APO relator was granted a request for an evidentiary hearing where she was represented by counsel, submitted evidence, had the opportunity to challenge the MDH staff and evidence and presented her own witnesses. Finally, as found by the commissioner, relator did not give any viable explanations or take responsibility for the incident that caused at least 22 individuals to become ill. Relator has not shown that the failure to provide the ten-day letter has caused prejudice and therefore, we cannot grant reversal on that ground.

Failure to Consider Statutory Factors

Relator argues that the commissioner did not balance or consider any statutory factors in the assessment of the penalty other than that the violation was seen as "serious" and "willful." Minn. Stat. § 144.991, subd. 1 states:

> (a) In determining the amount of a penalty under section 144.99, subdivision 4, the commissioner may consider:
>
>> (1) the willfulness of the violation;
>>
>> (2) the gravity of the violation, including damage to humans, animals, air, water, land, or other natural resources of the state;
>>
>> (3) the history of past violations;
>>
>> (4) the number of violations;
>>
>> (5) the economic benefit gained by the person by allowing or committing the violation; and
>>
>> (6) other factors as justice may require, if the commissioner specifically identifies the additional factors in the commissioner's order.
>
> (b) For a violation after an initial violation, the commissioner shall, in determining the amount of a penalty, consider the factors in paragraph (a) and the:
>
>> (1) similarity of the most recent previous violation and the violation to be penalized;
>>
>> (2) time elapsed since the last violation;
>>
>> (3) number of previous violations; and
>>
>> (4) response of the person to the most recent previous violation identified.

Minn. Stat. §144.991, subd. 1. Relator does not dispute that the lack of a license was serious, but rather argues that her actions were not willful.

"In many instances, the courts have defined 'willful' as a disregard for governing statutes and an indifference to their requirements, or a careless disregard of statutory requirements . . . [which includes violations] done with careless disregard of legal requirements." *In re Henry Youth Hockey Ass'n*, 511 N.W.2d at 456. Relator had a ServSafe certification and a food manager certification from the state. Relator's claimed belief that the church's kitchen was licensed was not considered by the commissioner because there is no such thing as a "licensed kitchen." Additionally, the forum determined that the letter relator received in 2009 made it very clear that a license was required in order

10

to engage in catering services. Relator testified that, as a certified food manager, she had knowledge of the food code. Minn. R. 4626.1755 (2014) (part of the food code) states "[a] person shall not operate a food establishment without a valid license to operate issued by the regulatory authority." By her own admission, relator knew that she should not operate a food establishment without a valid license. Additionally, even if relator did not know the specific rule, one who has been warned about operating without a license previously, even though the previous warning was specific to operating out of her home, is on notice to seek and procure the necessary food licenses if she wishes to run a catering business.

Finally, relator's testimony at the hearing regarding what she did after she found out that someone had been ill indicates that she knew she needed a personal catering license, prior to being issued the penalty:

> COUNSEL: If you could, please tell us what led up to . . .
> RELATOR: To get my license?
> COUNSEL: . . . you getting this receipt. Yes.
> RELATOR: Okay. I was in the plan of coming downtown anyway to get my license, try to get them. And so I had never talked back to [the University of Minnesota coordinator], didn't talk back to [the University of Minnesota coordinator] at all. And so I said, well, I better try to get my license, you know. But I knew these license – If someone was sick, I know these license wasn't going to help me, but it'd be a process for me to get them.
> . . . .
> COUNSEL: Okay. And so when you were applying for this license, did you think that you were applying for yourself personally, or did you think you were applying for it for the Progressive Baptist Church.
> RELATOR: Personal.

Additionally, relator had obtained a temporary license on at least one previous occasion when relator catered for the City of St. Paul. This indicates that she was aware that, on

11

certain occasions when she was running a catering business, that a temporary license was required.

Given the substantial facts in the record, the commissioner did not act arbitrarily or capriciously in finding that relator's violation was both serious and willful.

Because all the commissioner's decisions were supported by a rational connection between the facts found and the choice made, we conclude that the commissioner did not abuse its discretion in enforcing the $10,000 APO. We are aware that this is a steep financial penalty. Nevertheless, we are obligated to follow the law.

**Affirmed.**